UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON MILLS ANDERSON,<br><br>  Plaintiff,<br><br>  v.<br><br>C. PENA,<br><br>  Defendant. | No. 2:20-CV-1364-DJC-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Pending before the Court is Defendant's unopposed motion for summary judgment, ECF No. 30-1.

Plaintiff alleges that Defendant violated his Eighth Amendment rights to adequate medical care by slicing his arm when administering a vaccination, and by failing to properly treat the resulting wound. See ECF No. 1, pgs. 6-7. Defendant moves for summary judgment because: (1) Plaintiff's alleged injury was not sufficiently serious; (2) Defendant's alleged conduct did not meet the deliberate indifference standard; and (3) Defendant is entitled to qualified immunity.[1] See ECF No. 30-1, pgs. 5-11. The undersigned agrees that there was no Eighth Amendment violation and recommends that Defendant's motion for summary judgment be granted.

---

[1] As discussed herein, the Court finds no underlying constitutional violation and thus does not consider whether Defendant is entitled to qualified immunity.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff states that Correctional Officer (CO) Smith escorted him to the Administrative Segregation (Ad-Seg) triage unit to receive his third dose of the Hepatitis B vaccine on August 6, 2018. See ECF No. 1, pgs. 6, 17. Plaintiff alleges Defendant Pena, a Psychiatric Technician (PT), was present and engaged CO Smith in conversation. See id. at 6. Plaintiff alleges that Defendant Pena prepared the vaccination without discussing the procedure or dosage with Plaintiff. See id. Plaintiff further states he believed a nurse would administer the vaccination rather than the PT, Defendant Pena, because Plaintiff alleges Defendant Pena was not qualified to administer the vaccination. See id. Plaintiff states that Defendant Pena "attempt[ed] to give Plaintiff the vaccination shot while still engaged in a deep conversation with [CO] Smith. See ECF No. 1, pg. 6.

///

Rather than correctly administering the shot, Plaintiff claims Defendant Pena "sliced Plaintiff['s] arm completely open" with the needle and "dropped the syringe on the triage floor[,] breaking it." See id. Plaintiff alleges that Defendant Pena stated that this was his first time administering a shot and asked if Plaintiff would like him to get a new needle before trying again. See id. at 7. Plaintiff responded, "Yeah, I want you to use another syringe." See id.

Plaintiff alleges that Defendant returned with a new syringe prepared with a dosage unknown to the Plaintiff, and then Defendant administered the shot. Id. Plaintiff contends that his arm was bloody from the previous cut and that when he asked if Defendant was going to clean the wound, Defendant replied, "You'll be alright," but did not clean the wound. See id. Upon leaving the triage unit, Plaintiff alleges an Ad-Seg officer noticed "plaintiff's arm would not stop bleeding and covered his jumpsuit with blood" and gave him a new clean jumpsuit before escorting him back to his cell. See id.

Plaintiff alleges that Defendant was not trained to administer vaccinations and failed to notify an RN that he had sliced Defendant's arm. See id. Plaintiff filed an administrative appeal complaining of the "unauthorized vaccination shot by LPT Pena" and the "failure to clean and bandage the wound he caused." See id. Plaintiff states that his claim was answered and "he was informed that staff violated CDCR policy." See id. Plaintiff states that the appeal was forwarded to the Headquarters' Level, but he was informed that "no intervention will be taken" and he states this "exhaust[ed] his administrative remedies." See id. at 8.

## II. THE PARTIES' EVIDENCE

Defendant has offered a Statement of Undisputed Facts (SUF). In support of his SUF, Defendant submitted the declaration of Defendant Pena, ECF No. 30-6, and the declaration of Sarah E. Singer, Defendant's counsel, with a portion of Plaintiff's deposition attached thereto as Exhibit A. See ECF No. 30-5. Finally, Defendant submitted the Declaration of Registered Nurse (RN) Rada to provide information regarding Plaintiff's medical records. See ECF No. 30-7.

///

4

Plaintiff has not opposed Defendants' motion nor otherwise disputed any of Defendant's evidence. The docket does not reflect any filings by Plaintiff after Defendants filed their motion for summary judgment.

Because Defendant's motion is unopposed and, as such, Defendant's evidence is necessarily undisputed, the Court accepts Defendant's summary of the facts as follows:

> On August 6, 2018, Plaintiff arrived at the medical unit in the ASU for his Hepatitis B vaccination. (SUF 3.) Before injecting Plaintiff's left deltoid, the shot slipped from PT Pena's hand, and the sterile syringe needle scratched Plaintiff's arm on its way to the floor. (SUF 4.) The Hepatitis B vaccine is administered with a 23-gauge sterile needle. (SUF 5.) PT Pena observed minimal bleeding at the site, and provided Plaintiff with a cotton swab. (SUF 6.) Based on PT Pena's training and experience, he assessed the scratch as superficial in nature, and determined that it did not require treatment. (SUF 7.)
>
> Plaintiff testified that the cut from the vaccination needle was anywhere from one to two inches. (SUF 8.) After his vaccination, he received a band-aid and some wipes; the cut stopped bleeding within a few hours; it did not hurt too bad; and he had some itching and twitching for a couple weeks. (SUF 9.) He received ibuprofen, but did not know if he used it all. Plaintiff testified that his activities of daily living were not significantly affected. (SUF 10-11.)
>
> * * *
>
> After Plaintiff's vaccination on August 6, 2018, he saw health care services on six additional dates in August 2018. (SUF 12.) None of those visits were with PT Pena. (*Id*.) Plaintiff filled out a health care services request form, known as a 7362, dated August 13, 2018. (SUF 13.) Plaintiff wrote on the form, "I was sliced with a needle and I've been feeling pain and twitching in the area." Registered Nurse (RN) Yang received and reviewed the form on August 16, 2018. (*Id*.) In the interim, Plaintiff saw nursing twice on August 14, 2018, prior to going outside the prison for an outside medical appointment for a thyroid nuclear scan, and upon his return. (SUF 14.) Plaintiff did not report any complaints related to a scratch, nor was a scratch noted. (*Id*.) On August 16, 2018, RN Silvera saw Plaintiff regarding his request for health care services, dated August 13, 2018. (SUF 15.) He reported that the licensed vocational nurse dropped his Hepatitis B vaccine needle and it scratched him. (*Id*.) RN Silvera noted on exam no sign of a scratch, puncture wound, or any lesion to the skin at all. (*Id*.) He further noted that Plaintiff had no medical complaints at the time or symptoms of distress. (*Id*.)
>
> Five days later, Plaintiff saw physician assistant (PA) Gomer on August 21, 2018, for a follow-up after surgical consult related to hyperparathyroidism. (SUF 16.) Plaintiff did not report any complaints related to a scratch, nor was a scratch noted. (*Id*.) Plaintiff then had an outside medical visit with Dr. Wright on August 23, 2018, to discuss surgical exploration related to his hyperparathyroidism. (SUF 17.) Dr. Wright's pre-examination discussion with Plaintiff notes denial of rash, itching, and new skin lesions; and her physical exam notes no edema or

tenderness upon inspection of the left upper extremity. (*Id*.) The same day he saw RN Ilten, upon return from his offsite appointment. (*Id*.) Plaintiff did not report any complaints related to a scratch, and no scratch is noted. (*Id*.)
On August 28, 2018, Plaintiff saw PA Reed for an endocrinology follow-up after seeing a specialist on August 23, 2018. (SUF 18.) PA Reed noted Plaintiff's wish to proceed with exploratory surgery of the parathyroid and possible thyroidectomy. (*Id*.) Plaintiff reported no other medical problems and no current medications. (*Id*.) Plaintiff's last August 2018 visit to health care services occurred August 31, 2018. (SUF 19.) He reported an onset of hives over the last two days. (*Id*.)

ECF No. 30-11, pgs. 2-3.

### III. DISCUSSION

Defendant Pena presents three arguments in support of his motion for summary judgment: (1) Plaintiff's alleged injury is not sufficiently serious to meet the constitutional standard of a serious medical need; (2) Defendant's alleged conduct does not meet the deliberate indifference standard required to establish an Eighth Amendment claim; and (3) Defendant is entitled to qualified immunity. See ECF No. 30-1, pgs. 5-10.  For the reasons discussed herein, the Court agrees with Defendant and finds no constitutional violation occurred.  Therefore, the Court does not address whether Defendant is entitled to qualified immunity.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

1  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

2  official must have a "sufficiently culpable mind."  See id.

3  　　　　　Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

4  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105;

5  see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health

6  needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by

7  Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if the failure to

8  treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and

9  wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled

10 on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see

11 also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness

12 are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2)

13 whether the condition significantly impacts the prisoner's daily activities; and (3) whether the

14 condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122,

15 1131-32 (9th Cir. 2000) (en banc).

16 　　　　　The requirement of deliberate indifference is less stringent in medical needs cases

17 than in other Eighth Amendment contexts because the responsibility to provide inmates with

18 medical care does not generally conflict with competing penological concerns.  See McGuckin,

19 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

20 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

21 1989).  The complete denial of medical attention may constitute deliberate indifference.  See

22 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

23 treatment, or interference with medical treatment, may also constitute deliberate indifference.  See

24 Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate

25 that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

26 / / /

27 / / /

28 / / /

1       Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

      **A.**    **Objective Requirement of a Serious Medical Need**

      Here, Defendant argues that Plaintiff's injuries are insufficient to constitute a serious medical need.  See ECF No. 30-1, pgs. 5-7.  The Court agrees.

      The first factor in the Lopez test is not satisfied because Plaintiff attended several medical appointments after the alleged incident and the alleged injury was not observed or discussed in any of them.  See ECF No. 30-7, pgs. 3-4 (Rada declaration).  Ten days after the alleged injury occurred, Registered Nurse (RN) Silvera examined Plaintiff, who wanted to file a grievance regarding the incident, and noted "there was no sign of a scratch, a puncture wound, or any lesion to the skin at all."  See id. at 10 (Exhibit A to Rada declaration).  Additionally, Plaintiff attended six other medical appointments throughout the month of August and neither the Plaintiff nor any of the physicians discussed the alleged injury.  See id. at 3-4.  This evidence, which Plaintiff does not dispute, indicates that the first factor of the Lopez test is not satisfied because a reasonable doctor would not think the alleged wound was worthy of comment.

      There is also no genuine issue of material fact regarding the third factor of the Lopez test which evaluates if the injury is chronic and accompanied by substantial pain.  Defendant argues that the injury was not significant and did not expose Plaintiff to any additional harm or serious pain.  See ECF No. 30-1, pgs. 5-7.  Defendant submits evidence that Plaintiff stated that the wound stopped bleeding after a few hours and "did not hurt too bad."  See ECF No. 30-5, pgs. 12-13 (Exhibit A to Singer declaration).  This evidence indicates the injury was neither chronic or accompanied by substantial pain.  Thus, two of the three Lopez factors strongly support the conclusion that Plaintiff's injury did not meet the objective standard of a serious medical need.

///

1          Turning to the second <u>Lopez</u> factor, at his deposition, Plaintiff stated that his daily activities were significantly affected by the injury. <u>See</u> ECF 30-5, pgs. 18-19 (Exhibit A to Singer declaration). Specifically, Plaintiff testified that he halted his workout routine for one month after the injury, and thus his daily activities were impacted. <u>See id.</u> More significantly, Plaintiff's deposition offered evidence that "it's easy to get staph infections" in prison when there is an open wound, which could indicate that the untreated injury exposed him to an increased risk of infection. <u>See</u> transcript of Plaintiff's deposition. pg. 50, ln. 10-21.

          The Court finds this evidence relating to Plaintiff's daily activities is not sufficient to outweigh the other two <u>Lopez</u> factors. Plaintiff has failed to submit any evidence indicating that his modified workout routine or his risk of staph infection met this standard of creating a significant impact on Plaintiff's daily activities. While Plaintiff's workout routine was impacted, the impact was not significant as it lasted only a short duration. Further, there is no indication that Plaintiff actually adjusted his daily activities due to a fear of infection.

          On the whole, the Court finds that the undisputed evidence shows that Plaintiff's injury was not sufficiently serious to satisfy the objective prong of the test for an Eighth Amendment violation. Thus, because there is no genuine issue of material fact regarding the objective severity of the injury, the motion for summary judgment should be granted.

  **B.**   **<u>Subjective Requirement of Deliberate Indifference</u>**

          In the complaint, Plaintiff asserts that Defendant provided inadequate medical care by dropping the syringe, resulting in a cut in the Plaintiff's arm, and failing to treat the wound. <u>See</u> ECF No. 1, pgs. 6-7. Defendant claims these actions do not amount to deliberate indifference. <u>See</u> ECF No. 30-1, pgs. 7-10. The Court agrees. Both actions of the Defendant can be characterized as either negligence, or medical care that did not conform to Plaintiff's desired standards. A mere difference in opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. <u>See</u> <u>Jackson</u>, 90 F.3d at 332.

/ / /

/ / /

Defendant argues that he used his experience as a PT and "assessed the scratch as superficial in nature, and it did not require treatment." See ECF No. 30-6, pg. 2 (Pena declaration). Defendant also submits evidence that he was qualified to handle the specific medical procedure which resulted in Plaintiff's injury, as the Plaintiff's medical records indicate he was "scheduled to receive [his] vaccine [August 6, 2018,] by medline nurse or PT." See id. at 5 (Exhibit A to Pena declaration). This evidence indicates that Defendant, the PT, was authorized to perform the procedure and qualified to opine on the subsequent treatment. RN Rada's declaration that the "administration of vaccines is part of a PT's regular duties" further supports that the Defendant was authorized to perform the procedure. See ECF No. 30-7, pg. 2.

Defendant does not contest that "the shot slipped from [PT Pena's] hand and on its way to the floor the sterile needle scratched [Plaintiff's] arm." See ECF 30-6, pg. 2. However, the scratch alone is insufficient to establish an Eighth Amendment violation because the Defendant must have a "sufficiently culpable mind" to satisfy the subjective prong of the Farmer test. See Farmer, 511 U.S. at 834. Plaintiff has failed to submit any evidence indicating that Defendant had a culpable mind when the scratch occurred. Thus, there is no triable issue of fact regarding the claim that the scratch itself was a violation of the Eighth Amendment.

The inadequate treatment of a medical condition can also constitute deliberate indifference and violate a prisoner's Eighth Amendment rights. See Lopez, 203 F.3d at 1131. "A prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." Sandoval v. Cnty. of San Diego, 985 F.3d 657, 680 (9th Cir. 2021). However, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. See Thomas v. Diaz, No. 107CV540AWIDLBPC, 2008 WL 227932, at *5 (E.D. Cal. Jan. 28, 2008) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989)). A medical provider is deliberately indifferent to serious medical needs if they are aware that "[the prisoner" experiences 'clinically significant' distress that impairs [their] ability to function" and "nonetheless continue [sic] with [the prisoner's] ineffective treatment plan." See Edmo v. Corizon, Inc., 935 F.3d 757, 793 (9th Cir. 2019).

        Here, Plaintiff alleges that the Defendant inadequately treated the laceration resulting from the dropped needle and claims that the lack of treatment was an Eighth Amendment violation. See ECF No. 1, pgs. 9-11. Defendant claims that the lack of treatment was a reasonably diligent method of responding to the injury because "based on PT Pena's training and experience … the scratch [was] superficial in nature and it did not require treatment." See ECF No. 30-6, pg. 2. Defendant Pena supports his assertion with evidence that on August 16, 2020, ten days after the incident, Plaintiff visited a nurse to complain of the incident, and the nurse noted "no sign of a scratch, puncture wound, or any lesion to the skin at all" when they assessed his alleged injury. See ECF No. 30-7, pg. 3. Plaintiff submits no evidence to indicate that the treatment was deliberately inadequate or inadequate at all.

        Edmo is instructive in evaluating deliberate indifference in medical treatment. The plaintiff in Edmo is a male-to-female transgender prisoner who argued that gender conforming surgery was medically necessary given her circumstances. See Edmo 935 F.3d at 767. The plaintiff alleged the defendant, her physician, was deliberately indifferent to her medical needs by denying such a surgery. See id. The plaintiff was diagnosed with gender dysphoria and the defendant treated the condition with hormone therapy so plaintiff's hormone levels could conform with her gender identity. See id. at 772. This treatment, although often effective, was insufficient for the plaintiff who submitted evidence that she attempted to castrate herself two separate times so she her body could mor closely conform to her gender identity. See id. at 793. The defendant physician was aware of the castration attempts and did not change the plaintiff's treatment plan. See id. The court found that this was sufficient evidence to conclude that the defendant was deliberately indifferent to the plaintiff's medical needs because they did not alter the treatment plan despite the evidence that the plaintiff's wellbeing was at serious risk. See id.

        Here, the Defendant made a medical decision to allow the wound to heal naturally. See ECF No. 30-6, pg. 2. Plaintiff submits that he disagrees with the decision. See transcript of Plaintiff's deposition. pg. 34, ln. 18-25. Unlike the plaintiff in Edmo, Plaintiff did not submit any evidence indicating that the Defendant knew or should have known that the treatment plan was ineffective. Plaintiff submitted no evidence that his laceration could lead to further injuries

without additional treatment, and thus there is no evidence indicating that the Defendant was deliberately indifferent.  Nor is there any evidence indicating the provided medical care was inadequate for the laceration.  See Johnson v. Runnels, No. CIVS-04-0776LKKEFBP, 2010 WL 3430369, at *16 (E.D. Cal. Aug. 30, 2010) (holding that evidence of untreated minor lacerations is not sufficient to create a genuine issue of material fact that defendants were deliberately indifferent to medical requests).  Thus, Plaintiff has failed to establish a triable issue of material fact and the motion for summary judgment should be granted.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's unopposed motion for summary judgement, ECF No. 30, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 30, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE